**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **JOSÉ SANABRIA,** | ) | |
| 17738 Topfield Drive | ) | |
| Gaithersburg, Maryland 20877 | ) | **Civil Action No.** |
|  | ) | |
| **JOSÉ LAZO FERRUFINO,** | ) | **COLLECTIVE AND CLASS ACTION** |
| 721 Shepherd Street NW | ) | **COMPLAINT** |
| Washington, D.C. 20011 | ) | |
|  | ) | |
| **GEORGE BETANCOURTH,** | ) | |
| 8512 Flower Avenue, Apartment 2 | ) | |
| Takoma Park, Maryland, 20912 | ) | |
|  | ) | |
| **FRANCISCO CABALLERO,** | ) | |
| 18416 Honeylocus Circle | ) | |
| Gaithersburg, Maryland 20879 | ) | |
|  | ) | |
| **JESUS CANJURA,** | ) | |
| 2257 Lewisdale Drive | ) | |
| Hyattsville, Maryland, 20783 | ) | |
|  | ) | |
| **JAIME SANABRIA,** | ) | |
| 503 Domer Avenue, Apartment 101 | ) | |
| Takoma Park, Maryland, 20912 | ) | |
|  | ) | |
| **WILBER RODRIGUEZ,** | ) | |
| 8498 Richmond Highway, Apartment 202 | ) | |
| Alexandria, Virginia 22309 | ) | |
|  | ) | |
| **JOSE LEONEL MARQUEZ** | ) | |
| 17738 Topfield Drive | ) | |
| Gaithersburg, Maryland 20877 | ) | |
|  | ) | |
| **On behalf of themselves and all** | ) | |
| **others similarly situated,** | ) | |
|  | ) | |
| **Plaintiffs,** | ) | |
|  | ) | |

1

|                                           | )  |
| ----------------------------------------- | -- |
| **v.**                                    | )  |
|                                           | )  |
| **M/A ELECTRIC, LLC**                     | )  |
| **d/b/a TOWER DAVIS ELECTRIC**            | )  |
| 4500 Southgate Pl. # 400                  | )  |
| Chantilly, VA 20151                       | )  |
|                                           | )  |
| **DAVID A. DI SANTO**                     | )  |
| 12231 Harbor Town Circle                  | )  |
| Fairfax, VA  22033                        | )  |
|                                           | )  |
|                                           | )  |
| **Defendants.**                           | )  |

## FIRST AMENDED COMPLAINT

Plaintiffs Jose Sanabria, Jaime Sanabria, George Betancourth, Francisco Caballero, Jose Lazo Ferrufino and Jesus Canjura (collectively "Plaintiffs"), by their undersigned counsel and on behalf of others similarly situated, for their collective action Complaint, hereby allege as follows:

## NATURE OF THE ACTION

Plaintiffs, individually and on behalf of others similarly situated, bring this collective and class action against Defendants M/A Electric, LLC, doing business as Tower Davis Electric ("Tower Davis"), and David A. DiSanto to redress violations of federal and District of Columbia law that occurred during the course of Plaintiffs' employment with Defendants.  By the actions and omissions alleged herein, Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the D.C. Minimum Wage Act, D.C. Code Ann. §§ 32-1001 *et seq.* ("DCMWA").  Plaintiffs seek back pay in the form of unpaid overtime wages for labor and services rendered on Defendants' behalf, liquidated damages, attorneys' fees, costs, and expenses, and any other legal or equitable relief that this Court deems proper to redress Defendant's unlawful actions.

**JURISDICTION AND VENUE**

1.      This Court has subject-matter jurisdiction over Count I of this complaint pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331 because this action arises under the laws of the United States.

2.      This Court has supplemental jurisdiction over Count II in this complaint, which arises under the laws of the District of Columbia, pursuant to 28 U.S.C. §1367(a), because the claims in Count II arise from a common set of operative facts with Count I.  The Claims in Count II are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy.

3.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. §1391(b) because a substantial part of Defendants' actions and omissions giving rise to the claims in this Complaint occurred in the District of Columbia. Defendants frequently do business in the District of Columbia and are subject to personal jurisdiction in the district.

4.      This court has personal jurisdiction over Defendant Tower Davis because it has substantial, continuous, and systematic contacts with the District of Columbia. Personal jurisdiction over Defendant is also proper because a substantial part of the actions and omissions alleged herein occurred in the District of Columbia.

5.      This court has personal jurisdiction over Defendant David A. DiSanto because he has substantial, continuous, and systematic contacts with the District of Columbia. Personal jurisdiction over Defendant is also proper because a substantial part of the actions and omissions alleged herein occurred in the District of Columbia.

## **PLAINTIFFS**

6.     Plaintiff José Sanabria resides in Gaithersburg, Maryland. He began working on behalf of Defendants as an electrical construction worker at the Center for Strategic and International Studies ("CSIS") at 1616 Rhode Island Avenue, Washington, D.C., 20036, on or about August 3, 2012.  Plaintiff continued to work for Defendants until his termination on August 8, 2013.

7.     For the entire duration of the events giving rise to the allegations in this Complaint, Defendants employed Plaintiff José Sanabria within the meaning of 29 U.S.C. §203(g).

8.     Defendants employed Plaintiff José Sanabria within the meaning of D.C. Code §32-1002(1).

9.     Plaintiff Jaime Sanabria resides at 503 Domer Avenue, Apartment 101, Takoma Park, Maryland, 20912.  He worked on behalf of Defendants as an electrical construction worker at the CSIS construction site at 1616 Rhode Island Avenue, Washington, D.C. 20036 until his termination on August 8, 2013.

10.     Defendants employed Plaintiff Jaime Sanabria within the meaning of 29 U.S.C. §203(g).

11.     Defendants employed Plaintiff Jaime Sanabria within the meaning of D.C. Code §32-1002(1).

12.     Plaintiff George Betancourth resides at 8512 Flower Avenue, Apartment 2, Takoma Park, Maryland, 20912.   He worked on behalf of Defendants as an electrical construction worker at the CSIS construction site at 1616 Rhode Island Avenue, Washington, D.C. 20036 until his termination on August 8, 2013.

4

13.     Defendants employed Plaintiff George Betancourth within the meaning of 29 U.S.C. §203(g).

14.     Defendants employed Plaintiff George Betancourth within the meaning of D.C. Code §32-1002(1).

15.     Plaintiff Francisco Caballero resides at 18416 Honeylocus Circle, Gaithersburg, Maryland 20879.  He began working on behalf of Defendants as an electrical construction worker at the CSIS construction site at 1616 Rhode Island Avenue, Washington, D.C. 20036 on or about April 25, 2013.  Plaintiff continued to work for Defendants until July 5, 2013.

16.     Defendants employed Plaintiff Francisco Caballero within the meaning of 29 U.S.C. §203(g).

17.     Defendants employed Plaintiff Francisco Caballero within the meaning of D.C. Code §32-1002(1).

18.     Plaintiff José Lazo Ferrufino resides at 721 Shepherd Street NW, Washington, D.C. 20011.  He began working on behalf of Defendants as an electrical construction worker at the CSIS construction site at 1616 Rhode Island Avenue, Washington, D.C. 20036 on or about April of 2013. Plaintiff continued to work for Defendants until his termination on August 8, 2013.

19.     Defendants employed Plaintiff José Lazo Ferrufino within the meaning of 29 U.S.C. §203(g).

20.     Defendants employed Plaintiff José Lazo Ferrufino within the meaning of D.C. Code §32-1002(1).

21.     Plaintiff Jesús Canjura resides at 2257 Lewisdale Drive, Hyattsville, Maryland, 20783.  He began working on behalf of Defendants as an electrical construction worker at the

CSIS construction site at 1616 Rhode Island Avenue, Washington, D.C. 20036 from on or about February 25, 2013.  Plaintiff continued to work for Defendants until his termination on August 8, 2013.

22.   Defendants employed Plaintiff Jesús Canjura within the meaning of 29 U.S.C. §203(g).

23.   Defendants employed Plaintiff Jesús Canjura within the meaning of D.C. Code §32-1002(1).

24.   Plaintiff Wilber Rodriguez resides at 8498 Richmond Highway, Apartment 202, Alexandria, Virginia 22309. He began working on behalf of Defendants as an electrical construction worker at the CSIS construction site at 1616 Rhode Island Avenue, Washington, D.C. 20036 in approximately May of 2012.  Plaintiff continued to work for Defendants until his termination on August 8, 2013.

25.   Defendants employed Plaintiff Wilber Rodriguez within the meaning of 29 U.S.C. §203(g).

26.   Defendants employed Plaintiff Wilber Rodriguez within the meaning of D.C. Code §32-1002(1).

27.   Plaintiff Jose Leonel Marquez resides at 17738 Topfield Drive, Gaithersburg, MD.  He began working on behalf of Defendants as an electrical construction worker at the CSIS construction site at 1616 Rhode Island Avenue, Washington, D.C. 20036 in approximately June of 2012.  Plaintiff continued to work for Defendants until his termination in August  2013.

28.   Defendants employed Plaintiff Jose Leonel Marquez within the meaning of 29 U.S.C. §203(g).

29.     Defendants employed Plaintiff Jose Leonel Marquez within the meaning of D.C. Code §32-1002(1).

## DEFENDANTS

30.     Tower Davis Electric is a Virginia corporation with its principal place of business in Chantilly, Virginia. Upon information and belief, Tower Davis provides services as an electrical contractor in the Washington, D.C. metropolitan area.

31.     Tower Davis is an enterprise engaged in interstate commerce. Upon information and belief, Tower Davis has annual business in excess of $35,000,000.

32.     At all relevant times, Tower Davis, through its employees, had and exercised both the actual and apparent authority to bind and set wage and hour policies, and to hire or fire Plaintiffs and other workers at the CSIS construction worksite.

33.     Tower Davis is an employer within the meaning of 29 U.S.C. §203(d).

34.     Tower Davis is an employer within the meaning of D.C. Code §32-1002(3).

35.     Upon information and belief, at all relevant times Defendant David A. DiSanto was an owner, agent, and/or principal of Defendant Tower Davis with both the actual and apparent authority to bind and set wage and hour policies and practices for Tower Davis.

36.     David A. DiSanto is an employer within the meaning of 29 U.S.C. §203(d).

37.     David A. DiSanto is also an employer within the meaning of D.C. Code §32-1002(3).

## FLSA COLLECTIVE ACTION CLASS and

## D.C. COLLECTIVE AND CLASS ACTION CLASSES

38.     The FLSA Class Representatives, Plaintiffs, bring this action as a collective action pursuant to 29 U.S.C. §216(b), on behalf of themselves and all other persons similarly

situated, who are or have been employed by Defendants for the CSIS building project as non-exempt, hourly employees, between August 1, 2011, to the present (the "FLSA Class Period"), who were not always paid "time and one-half" the regular hourly rate for hours worked in excess of forty (40) hours in any one workweek. Together, these individuals constitute the "FLSA Class Members."

39.     Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23, and as a collective action pursuant to D.C. Code §32-1012(b), on behalf of themselves and all other non-exempt employees, who performed construction duties for Tower Davis at the CSIS worksite in the District of Columbia between August 1, 2011, to the present (the "D.C. Class Period"). These individuals constitute the "D.C. Class Members."

## STATEMENT OF FACTS

### Factual Allegations Common to Plaintiffs FLSA and DCMWA Wage and Hour Claims

40.     Defendants are in the business of providing services as an electrical contractor in the Washington, D.C. metropolitan area.

41.     Noé Rodriguez is an individual doing business as RDZ Electric ("RDZ").   The last known address for Mr. Rodriguez is 9801 Lakeshore Drive, Montgomery Village, Maryland, 20886.  RDZ Electric is not an incorporated entity.

42.     Upon information and belief, Mr. Rodriguez supplied workers to Defendants and other construction contractors in the District of Columbia and Maryland.

43.     Mr. Rodriguez is not an electrical contractor or an electrical subcontractor.  He is not licensed to do any business in the District of Columbia, and does not have the knowledge, skill, or ability to provide and/or supervise the provision of electrical contractor services.

44.     Defendants paid Plaintiffs and similarly situated employees for their work on the CSIS job site through Mr. Rodriguez.

45.     Mr. Rodriguez was not present at the CSIS job site on a regular basis.

46.     Mr. Rodriguez did not determine Plaintiffs' and similarly situated employees' assignments or supervise their work.

47.     Mr. Rodriguez did not provide Plaintiffs and similarly situated employees with the instruments and materials they needed to perform their assigned work.

48.     Mr. Rodriguez's sole role at the CSIS project was to identify and deliver laborers to work under the direction and control of Defendants, and to serve as a "pass through" for wages Defendants owed Plaintiffs and others similarly situated.

49.     Upon information and belief, Mr. Rodriguez received payments from Defendants, based on the number of hours worked by each Plaintiff and similarly situated employee, for the wages Defendants owed to them.

50.     Upon information and belief, Mr. Rodriguez retained a portion of the monies he received from Defendants for the work performed by Plaintiffs and similarly situated employees, and then he paid a fixed hourly wage to each.

51.     Using these funds supplied by Defendants, Mr. Rodriguez issued a paycheck to Plaintiffs and similarly situated employees on a bi-weekly basis.

52.     Defendants supervised Plaintiffs and similarly situated employees and controlled the terms and conditions of their employment.

53.     Defendants' supervisors monitored and evaluated Plaintiffs' and similarly situated employees' job performance.

54.     Defendants provided Plaintiffs and similarly situated employees with the instruments and materials they needed to perform their assigned work.

55.     Defendants exercised significant control over Plaintiffs' and similarly situated employees' work schedules and employment status.

56.     Defendants required Plaintiffs and similarly situated employees to sign time sheets reporting the hours they worked.

57.     Defendants exercised the power to assign Plaintiffs and similarly situated employees job tasks and to direct the means of carrying out those tasks.

58.     Defendants' supervisors were on-site daily to instruct Plaintiffs and similarly situated employees about which tasks to complete.

59.     Defendants exercised the power to hire and fire Plaintiffs and similarly situated employees.

60.     On the morning of August 8, 2013, Defendants' supervisor Kevin, last name unknown, fired Plaintiffs and similarly situated employees after they expressed concern over changes to their schedules.

61.     Defendants' agents, including but not limited to Tony Green, Ernie Gray, Brian Sturtevant, Nick (last name unknown), and Kevin, last name unknown, authorized, assented to, and/or were aware of the work performed by Plaintiffs and similarly situated employees on the CSIS worksite.

**Additional Factual Allegations Relating to FLSA Wage and Hour Claims**

62.     During the FLSA Class Period, Defendants routinely required FLSA Class Members to work in excess of forty (40) hours in one workweek.

63.     Upon information and belief, at all relevant times prior to August 8, 2013, Defendants paid FLSA Class Members by the hour.

64.     At all relevant times, FLSA Class Members were "non-exempt" employees for purposes of the FLSA.

65.     Defendants required FLSA Class Members to complete time sheets reporting the hours they had worked. These time sheets show that FLSA Class Members frequently worked in excess of forty (40) hours per week.

66.     Throughout the FLSA Class Period, Defendants had a legal obligation to pay the FLSA Class Members for all work performed, including overtime compensation for hours worked in excess of forty (40) hours each workweek.

67.     Defendants had a legal obligation to pay FLSA Class Members one and one-half times their regular hourly rate of pay for every hour worked in excess of forty (40) hours each workweek.

68.     For many pay periods in which the hours of FLSA Class Members exceeded forty (40) hours in one workweek, FLSA Class Members' checks and paystubs from Defendants reflect payment for overtime hours at the same rate as all hours worked below forty (40) hours.

69.     Defendants did not pay FLSA Class Members all wages owed for each hour worked. Upon information and belief, Defendants failed to pay FLSA Class Members overtime at the rate of one and one-half times their regular hourly rates for hours worked in excess of forty (40) hours during each workweek.

70.     To date, FLSA Class Members have not been paid all earned compensation owed them for overtime hours worked during the FLSA Class Period.

71.     Defendants were and are aware that the FLSA requires it to pay all employees the federal overtime wages at one and one-half times their regular hourly rate.

**Factual Allegations Relating to DCMWA Wage and Hour Claims**

72.     During the D.C. Class Period, Defendants routinely required D.C. Class Members to work in excess of forty (40) hours in one workweek.

73.     Upon information and belief, at all relevant times Defendants paid D.C. Class Members by the hour.

74.     At all relevant times, D.C. Class Members were "non-exempt" employees for purposes of the DCMWA.

75.     Defendants required D.C. Class Members to complete time sheets reporting the hours they had worked. These time sheets show that D.C. Class Members frequently worked in excess of forty (40) hours per week.

76.     Throughout the D.C. Class Period, Defendants had a legal obligation to pay the D.C. Class Members for all work performed, including overtime compensation for hours in excess of forty (40) hours each workweek.

77.     Defendants had a legal obligation to pay D.C. Class Members one and one-half times their regular hourly rate of pay for every hour worked in excess of forty (40) hours each workweek.

78.     For many pay periods in which the hours of D.C. Class Members exceeded forty (40) hours in one workweek, D.C. Class Members' checks and paystubs from Defendants reflect payment for overtime hours at the same rate as all hours worked below forty (40) hours.

79.     Defendants did not pay D.C. Class Members all wages owed for each hour worked.  Upon information and belief, Defendants failed to pay D.C. Class Members overtime at

the rate of one and one-half times D.C. Class Members' regular hourly rates for hours worked in excess of forty (40) hours during each workweek.

80.     To date, Defendants have not paid D.C. Class Members all earned compensation owed them for overtime hours worked during the D.C. Class Period.

81.     Defendants' violations of the DCMWA overtime requirements were willful because their failure to comply with the DCMWA wage requirements was not in good faith. Defendants did not have reasonable grounds to believe that its failure to pay the D.C. overtime wage was not a violation of the law.

82.     Defendants' violations were willful because they knew that D.C. Class Members frequently submitted time sheets reporting more than forty (40) hours worked in one workweek; however, Defendants continued to provide RDZ a sum of money insufficient to pay Plaintiffs earned overtime wages.

83.     Defendants were and are aware that the DCMWA requires Defendants to pay time and one-half for every hour worked in excess of forty (40) hours in any one workweek.

84.     The compensation policies and practices set forth above, which are in violation of the DCMWA, constitute willful, knowing, and intentional violations of the DCMWA and the regulations promulgated thereto.

## FLSA COLLECTIVE ACTION ALLEGATIONS

85.     The collective action that Plaintiffs propose to maintain under the Fair Labor Standards Act, 29 U.S.C. §216(b), includes all FLSA Class Members who were not paid the FLSA overtime rate of one and one-half times each employee's regular rate for each hour worked in excess of forty (40) hours in any given workweek, during the FLSA Class Period.

86.     During the FLSA Class Period, the harms suffered by FLSA Class Members were the same as, or substantially similar to, those suffered by Plaintiffs, because Plaintiffs and FLSA Class Members are and/or were subject to the same unlawful compensation policies and practices of Defendants, as described in this Complaint.

87.     Plaintiffs and FLSA Class Members are "similarly situated" within the meaning of 29 U.S.C. §216(b) and are therefore entitled to proceed on a collective basis. All Plaintiffs and FLSA Class Members worked for Defendants at the CSIS worksite and were supervised by the same individuals. During their time at the CSIS worksite, Defendants did not pay Plaintiffs and FLSA Class Members the proper legally mandated wages for all hours worked in excess of forty (40) in any workweek.

88.     The number of FLSA Class Members is approximately 35, and each of these individuals was performing electrical contracting services for Defendants during the relevant FLSA Class Period. At this time, eight of these individuals have opted in to this litigation.  Their "opt-in" forms are attached to this Complaint.  Thus, a collective action is the most efficient mechanism for resolution of the claims of the FLSA Class Members.

89.     An action under 29 U.S.C. §216(b) is superior to all other available methods for the fair and efficient adjudication of this controversy, since the damages suffered by certain individual FLSA Class Members may be relatively small, and the expense and burden of individual litigation would make it impossible for individual FLSA Class Members to redress the wrongs done to them. Further, because of the similarity of the FLSA Class Members' claims, individual actions would present the risk of inconsistent adjudications.

## CLASS ACTION ALLEGATIONS

90.     The class action that Plaintiffs propose to maintain under the DCMWA includes all D.C. Class Members who are or were employees, as defined in the DCMWA who were not paid overtime for every hour worked in excess of forty (40) hours in any given workweek during the D.C. Class Period.

91.     Upon information and belief, there are approximately 35 present and former non-exempt employees of Defendants who performed electrical contracting services in the District of Columbia during the D.C. Class Period.

92.     The D.C. Class Members are so numerous that joinder of all members is impracticable.

93.     Plaintiffs' claims are typical of the claims of all other D.C. Class Members because Plaintiffs, and all other D.C. Class Members, are or were subject to the same unlawful compensation practices set forth in this Complaint.

94.     Plaintiffs adequately represent the D.C. Class Members because they and all other D.C. Class Members suffered damages under the same unlawful compensation practices set forth in this Complaint.

95.     Plaintiffs challenge the legality of Defendants' policies and practices as set forth in this Complaint. By advancing their own claims, Plaintiffs will necessarily advance the claims of all D.C. Class Members.

96.     Plaintiffs have no conflict with any D.C. Class Member and are willing to serve in this representative role.

97.     Plaintiffs have retained counsel who are competent and experienced in wage and hour class action litigation, and who will adequately represent the D.C. Class Members.

98.     Questions of fact and law common to all D.C. Class Members will predominate over any questions solely affecting individual D.C. Class Members. Among the common questions are:

A.     Whether Defendants are "employers" subject to District of Columbia law;

B.     Whether Defendants established and maintained the policies and practices set forth in this Complaint, as alleged, during the D.C. Class Period;

C.     Whether, as a result of these policies and practices, Defendants failed to pay Plaintiffs and D.C. Class Members all overtime pay duly owed under District of Columbia law;

D.     Whether Defendants' violations of District of Columbia law were willful; and

E.     Whether Plaintiffs and D.C. Class Members are entitled to relief as requested in this Complaint.

99.     Because Plaintiffs and D.C. Class Members suffered the same harms and challenge the same unlawful compensation policies and practices set forth in this Complaint, a class action is superior to the alternatives, if any exist, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously and efficiently without the duplication of effort, expense, and risk of inconsistent or varying adjudications presented by numerous individual actions.

100.    No difficulties are likely to be encountered in the management of this class action, and the identity of all thirty-five (35) D.C. Class Members is readily ascertainable from Defendants' records.

## DCMWA OPT-IN COLLECTIVE ACTION ALLEGATIONS

101.    The opt-in action that Plaintiffs propose to maintain under the DCMWA, D.C. Code §32-1012(b), includes all similarly situated D.C. Class Members who were not paid overtime wages for the hours over forty (40) they worked in any given workweek during the D.C. Class Period.

102.    During the D.C. Class Period, the harms suffered by the D.C. Class Members were the same as or substantially similar to those suffered by Plaintiffs, in that Plaintiffs and the D.C. Class Members were subject to the same unlawful compensation policies and practices as described in this Complaint.

103.    Accordingly, Plaintiffs and the D.C. Class Members are "similarly situated" within the meaning of D.C. Code §32-1012(b), and are therefore entitled to proceed on an opt-in basis.

104.    Plaintiffs believe there are about 35 similarly-situated persons who are or have been employed as non-exempt employees of Defendants, who performed electrical construction duties at the CSIS worksite in the District of Columbia during the D.C. Class Period.  Thus, to the extent that D.C. Class Members' claims are not included in the D.C. Class Action that Plaintiffs propose to maintain, an opt-in action is the most efficient mechanism for resolution of these claims.

105.    To the extent that the D.C. Class Members' claims are not included in the D.C. Class Action that Plaintiffs propose to maintain, an opt-in action under D.C. Code §32-1012(b) is superior to other available methods for the fair and efficient adjudication of this controversy because the damages suffered by certain individual D.C. Class Members may be relatively small, and the expense and burden of individual litigation would make it impossible for such D.C. Class

Members to individually redress the wrongs done to them. Further, because of the similarity of the D.C. Class Members' claims, individual actions would present the risk of inconsistent adjudications

**Count I: Violation of the FLSA-**

**All Plaintiffs and FLSA Collective Action Members**

106.    Plaintiffs and the FLSA Class Members re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

107.    Plaintiffs and the FLSA Class Members are or were employed by Defendants to perform manual labor and other "non-exempt" duties under the FLSA.

108.    Plaintiffs and the FLSA Class Members each worked more than forty (40) hours in one or more workweeks within the FLSA Class Period.

109.    In violation of 29 U.S.C. §207(a), Defendants failed to pay Plaintiffs and the FLSA Class Members for overtime work at a rate of at least one and one-half times the employees' regular rates of pay for hours worked in excess of forty (40) hours in any given workweek.

110.    Defendants' violations of the FLSA were repeated, willful and intentional. Accordingly, a three-year statute of limitations governs this claim pursuant to 29 U.S.C. §255(a).

111.    For its violations of the FLSA, Defendants are liable to Plaintiffs and the FLSA Class Members for all unpaid overtime compensation, an additional amount in liquidated damages, plus costs and reasonable attorneys' fees incurred in the filing and maintenance of this action.

**Count II: Violation of the D.C. Minimum Wage Act-**

**All Plaintiffs and D.C. Class Members**

112.    All Plaintiffs and D.C. Class Members re-alleged and incorporate by reference each and every allegation set forth in the preceding paragraphs.

113.    Defendants failed to pay Plaintiffs and the D.C. Class Members one and one-half times their regular rates of pay for every hour worked in excess of forty (40) hours each workweek, in violation of Section 32-1003(c) of the DCMWA.

114.    Defendants' violations of the DCMWA and regulations promulgated thereto were repeated, willful, and intentional.

115.    Defendants are liable to Plaintiffs and the D.C. Class Members under D.C. Code Ann. §32-1012(a) and (c), for unpaid overtime compensation, liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

**PRAYER FOR RELIEF**

Plaintiffs, on their own behalf and on behalf of the FLSA Class Members and D.C. Class Members, respectfully request that the Court:

A.    Declare this Action to be maintainable as a collective action pursuant to 29 U.S.C. §216(b);

B.    Determine that the damages sustained by Plaintiffs and FLSA Class Members during the FLSA Class Period are a result of Defendants' willful and intentional violations of 29 U.S.C. §§205(a) and 207(a), and award unpaid overtime wages against Defendants, jointly and severally, in favor of Plaintiffs and all FLSA Class Members, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b), plus such

pre-judgment interest as may be allowed by law, and enter judgment on those damages;

C.      Declare this Action to be maintainable as a class action pursuant to Fed. R. Civ. P. 23;

D.      Declare this Action to be maintainable as an opt-in action pursuant to D.C. Code §32-1012(b);

E.      Determine that the damages sustained by Plaintiffs and the D.C. Class Members during the D.C. Class Period are a result of Defendants' willful and intentional violations of the DCMWA, and award and enter judgment against Defendants, jointly and severally, for the wages owed plus an equal amount in liquidated damages, plus attorneys' fees and costs;

F.      Award Plaintiffs, FLSA Class members, and D.C. Class Members their reasonable attorneys' fees and costs including accountants' fees, investigators' fees, experts' fees, and other associated costs; and

G.      Grant Plaintiffs, FLSA Class Members, and D.C. Class Members such further relief as this Court may deem just and proper.

Respectfully submitted,


_____/s/_____
Daniel A. Katz (D.C. Bar No. 447412)
dkatz@ggilbertlaw.com
The Law Offices of Gary M. Gilbert & Associates
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Tel: (301) 608-0880
Fax: (301) 608-0881


Virginia Rae Diamond (D.C. Bar No.393934)
vdiamond@ashcraftlaw.com
Ashcraft & Gerel, LLC
4900 Seminary Rd., Suite 650
Alexandria, VA 22311
Tel: (703)931-5500
Fax: (703)820-0630

*Attorney for Plaintiffs*